FILED '08 SEP 18 15:34 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LOUISE G. AERHART,                                    CV 07-1774-TC

               Plaintiff,                          FINDINGS AND
                                                       RECOMMENDATION
    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,


               Defendant.

COFFIN, Magistrate Judge:

## **BACKGROUND**

    Plaintiff brings this action for judicial review of a final
decision of the Commissioner of Social Security denying her
application for disability insurance benefits and supplemental
security income under Title II of the Social Security Act (the
Act).  42 U.S.C. §§ 401-33.  The court has jurisdiction under 42
U.S.C. § 405(g).

    Plaintiff was 54 years old when the ALJ issued his decision.
Plaintiff obtained a high school education and had past relevant

work as a hospital secretary.  Plaintiff alleges disability due to a combination of impairments, including left foot pain, coronary artery disease, diabetes, obesity and depression. Plaintiff notes that she suffers from a recurrent cyst and chronic pain in her left foot that repeated surgeries have been unable to treat.  She has been diagnosed as suffering from significant neuropathy and Reflex Sympathetic Dystrophy.  The independent medical expert called to testify at the hearing opined that plaintiff "distinctly does have an abnormality of her left ankle" that involves chronic pain and "a necessity for a fair dose of oxycodone."  Tr. 665.

On appeal to this court, plaintiff contends the ALJ erred by (1) failing to provide adequate reasons to reject plaintiff's testimony; and (2) failing to provide adequate reasons to reject her daughter's testimony.

As discussed below, the Commissioner's decision should be reversed and remanded for an award of benefits.

## STANDARD OF REVIEW

The initial burden of proof rests on the claimant to establish disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995).  To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. Each step is potentially dispositive. The claimant bears the burden

of proof at steps one through four.  See Tacket v. Apfel, 180
F.3d 1094, 1098 (9th Cir. 1999).  The burden shifts to the
Commissioner, at step five, to identify jobs existing in
significant numbers in the national economy that the claimant can
perform.  Id.; see also 20 C.F.R. § 404.1560(c)(2).

     Here, at step one, the ALJ found that plaintiff had not
engaged in substantial gainful activity since her alleged onset
of disability; see 20 C.F.R. § 405.1520(b).

     At step two, the ALJ found that plaintiff  had the following
severe impairments: coronary artery disease, left foot pain,
diabetes, obesity, and depression; see 20 C.F.R. § 404.1520(c).

     At step three, the ALJ determined that plaintiff's
impairments did not meet or equal the requirements of a listed
impairment ; see 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).

     The ALJ assessed plaintiff with the residual functional
capacity (RFC) to perform light work with the following
limitations: no climbing of ladders, ropes or scaffolding; only
occasional climbing of ramps and stairs and only occasional
balancing, stooping , kneeling, crouching and crawling and only
occasional  interaction with the general public; see 20 C.F.R. §§
404.1520(e), 404.1545, 404.1567.

     At step four the ALJ found that plaintiff was  able to
perform her past relevant work as a hospital secretary ; see 20
C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f).  Because the ALJ found

that found plaintiff not disabled at step four, he did not
continue with the sequential evaluation to step five.

## DISCUSSION

**I.    The ALJ Improperly Rejected Plaintiff's Testimony .**

### A.    Plaintiff's Testimony

Plaintiff testified that she experiences searing pain in her
foot that is "like somebody's taking a potato peeler and trying
to peel the skin off my body." Tr. 649, 650. She testified that
on bad days she can't bear to have a sock or shoe, or even a bed
sheet touching her foot. In her most recent attempt to work,
plaintiff testified she missed two to three days every week
because of pain so bad she couldn't bear to have anything touch
her foot. Tr. 653-54.

Plaintiff also testified that she experiences fatigue and
shortness of breath. She walks with the assistance of a cane.
She testified: "Walking a block is a chore. Standing at the
stove to cook a full course meal is a chore on a good day and not
-it's not going to happen on a bad day." Tr. 671. On a typical
day, she can stand for no more than half an hour and must stop to
rest when walking the one block to her mailbox. She reported
that she needs to rest after being up for only a couple hours.

Plaintiff testified that her pain interferes with her

interaction with other people.  Plaintiff testified that, in past work settings, she was "short with" and "snapped at" others because of pain and received complaints as a result.  Tr. 653[1].

## B.  __The ALJ Failed to Provide Clear and Convincing Reasons for Rejecting Plaintiff's Testimony__

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for rejecting her testimony regarding her symptoms.

If the claimant produces objective medical evidence of an underlying impairment which could reasonably be expected to produce some degree of the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ must assess the credibility of the claimant regarding the severity of symptoms. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996); Cotton v. Bowen, 799 F.2d 1403, 1407-08 (9th Cir. 1986).

In assessing a claimant's credibility the ALJ may consider: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements

---

[1]Plaintiff's daughter also testified that the pain makes her mother "very irritable" and argumentative.  Tr. 672.  The ALJ found the daughter's testimony to not be entirely credible.  Tr. 29.  The ALJ has failed to provide germane and legally sufficient reasons for rejecting the daughter's testimony, see Plaintiff's Reply at p. 6, but such finding is not necessary for my opinion today.

concerning symptoms, and other testimony by the claimant that
appears less than candid; (2) unexplained or inadequately
explained failure to seek treatment or to follow a prescribed
course of treatment; (3) the claimant's daily activities; (4) the
objective medical evidence; (5) the location, duration,
frequency, and intensity of symptoms; (6) precipitating and
aggravating factors; (7) the type, dosage, effectiveness, and
side effects of any medication; and (8) treatment other than
medication.  See Smolen, 80 .3d at 1284; see also SSR 96-7p.

    The ALJ may not reject a claimant's testimony about the
severity of his symptoms solely because it is not corroborated
fully by objective medical findings.  Cotton, 799 F.2d at 1408.
The ALJ may reject the claimant's testimony regarding the
severity of her symptoms only by providing clear and convincing
reasons for doing so.  Dodrill v. Shalala, 12 F.3d 915, 918 (9th
Cir. 1993); Smolen, 80 F.3d at 1283.

    The ALJ, consistent with the testimony of the independent
medical expert, found that plaintiff's medically determinable
impairments could reasonably be expected to produce some degree
of the symptoms described.  Thus, absent evidence of malingering,
the ALJ was required to provide "clear and convincing" reasons
for concluding that "claimant's statements concerning the
intensity, duration and limiting effects of these symptoms are
not entirely credible."  Tr. 27, Smolen, 80 F.3d at 1283.  The

7 - FINDINGS AND RECOMMENDATION

ALJ does not mention malingering in his opinion and, as discussed below, the rejection of plaintiff's testimony regarding the severity of her symptoms is not supported with clear and convincing reasons.

The ALJ pointed to an examination in January of 2006 in which plaintiff had full range of motion and "not a great deal of tenderness" from palpation at the anterior of her ankle. Tr. 28, 599. However, the chart note from that exam makes clear that the findings cited by the ALJ relate to plaintiff's <u>right</u> ankle, on which she had previously undergone excision of a lipoma, rather than her <u>left</u> ankle, which is the source of the incapacitating pain and which the doctor in the same January 2006 examination described as continuing to cause significant symptomatolgy. Tr. 599.

The ALJ also noted , "[w]hile she still experiences pain and has been prescribed Oxycodone, she reported remarkable improvement after a podiatrist gave her kerolytic cream." Tr. 28. However, the record reflects that the cream helped with hyperkeratosis, a condition of thickened skin on plaintiff's feet. There  is no evidence that the thickened skin has anything to do with the pain plaintiff experiences from neuropathy and reflex sympathetic dystrophy or that the cream diminished that pain.

The ALJ does mention examining physician Kim Webster who noted, "the degree of pain is out of proportion to the objective findings" and that range of motion on the left ankle was zero, but that there was decent muscle bulk, tone and strength  in  the lower extremities.  Tr. 28.  However, even if such a statement could be used under Smolen to reject excess pain testimony, Dr. Webster offered the opinion without awareness of later X-rays and diagnosis of reflex sympathetic dystrophy with  neuropathy -- objective findings that explain plaintiff's chronic pain.  Tr. 586, 587.  Plaintiff's treating physicians, who were aware of the diagnoses, never expressed doubts regarding the severity of plaintiff's  pain symptoms.  And the independent medical expert called to testify at the hearing, who also had the benefit of the newer evidence, stated that plaintiff "distinctly does have an abnormality of her left ankle" that causes chronic pain and need for treatment with oxycodone.  Tr. 665.  Dr. Webster's opinion, made with limited information, does not amount to a clear and convincing reason for rejecting plaintiff's  testimony.

The ALJ addressed testimony regarding difficulty interacting with others by stating, "[h]er depression and pain limit her ability to interact with the public, but there is no difficulty engaging in routine types of interactions such as shopping and attending appointments." Tr. 29.  The ALJ also stated, "[w]hile she may be irritable at times, she has never

required mental health treatment other than antidepressant
medication prescribed by her family doctor." Tr. 29. But a
general ability to attend routine appointments and the absence of
mental health counseling says little about the kind of problems
with the pain induced work place interactions that plaintiff
described.

The reasons stated by the ALJ do not amount to clear and
convincing reasons for rejecting plaintiff's testimony.

II.    **This Action Should Be Remanded for an Award of Benefits**

The decision whether to remand for further proceedings or
for immediate payment of benefits is within the discretion of the
court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.), *cert.
denied*, 531 U.S. 1038 (2000). The issue turns on the utility of
further proceedings. A remand for an award of benefits is
appropriate when no useful purpose would be served by further
administrative proceedings or when the record has been fully
developed and the evidence is not sufficient to support the
Commissioner's decision. *Rodriguez v. Bowen,* 876 F.2d 759, 763
(9th Cir. 1989).

Improperly rejected evidence should be credited and an
immediate award of benefits directed where: (1) the ALJ has
failed to provide legally sufficient reasons for rejecting such
evidence; (2) there are no outstanding issues that must be

resolved before a determination of disability can be made; and
(3) it is clear from the record that the ALJ would be required to
find the claimant disabled were such evidence credited. *Harman
v. Apfel*, 211 F.3d at 1178 citing *Smolen v. Chater*, 80 F.3d 1273,
1292 (9th Cir. 1996). Of course, the third prong of this test is
actually a subpart of the second. *See Harman*, 211 F.3d at 1178
n. 7.

As discussed above, the ALJ failed to provide legally
sufficient reasons for rejecting the testimony of plaintiff (and
her daughter). The Commissioner notes in a general way the
ALJ's comment that "[w]hile the claimant's left foot impairment
results in significant limitations in standing and walking, there
is no evidence of difficulties with seated types of tasks." Tr.
28. The comment is accurate in the sense that no doctor has
imposed limits on seated activity, but irrelevant given that the
limiting symptoms plaintiff testified about include limitations
on standing and walking, her need to rest and pain severe enough
that it prevented her from leaving the house several days a week.
It was these endurance limitations from plaintiff's testimony
that caused the vocational expert to give an opinion(rejected by
the ALJ) that plaintiff cannot perform her past relevant work, or
any work, in the economy. Tr. 668. Such opinion was offered in
response to a vocational hypothetical based on plaintiff's
testimony that the ALJ formulated and posed to the vocational

expert.  Id.  The vocational expert also testified later in the proceeding that  difficulty interacting with people could interfere with plaintiff's past relevant work and could absolutely interfere with employability TR 669.

As such, it is clear from the record that the ALJ would be required to find the plaintiff disabled if the testimony of plaintiff (and her daughter) were credited.   There are no outstanding issues that must be resolved before a determination of disability can be made.

## **CONCLUSION**

Based on the foregoing, the Commissioner's decision should be reversed and remanded for an award of benefits pursuant to sentence four of 42 U.S.C. §405(g).

DATED this 18th day of September, 2008.

Thomas Coffin

United States Magistrate Judge

12 - FINDINGS AND RECOMMENDATION